### A08A0401. WILSON v. THE STATE.
(666 SE2d 573)

ADAMS, Judge.

David F. Wilson was convicted following a bench trial of trafficking in cocaine, trafficking in MDMA (ecstacy), possession of MDMA with intent to distribute, possession of marijuana with intent to distribute and possession of marijuana.[1] He appeals, enumerating as error the trial court's denial of his motion to suppress evidence of the contraband found during the search of his vehicle.

> Where, as here, the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to the undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). This Court's responsibility in reviewing the trial court's decision on the motion to suppress is to ensure that there was a substantial basis for the trial court's decision. *State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314) (1991).

*Trujillo v. State*, 286 Ga. App. 438, 440 (2) (649 SE2d 573) (2007).

As to this issue, the evidence shows that Wilson was initially stopped by Deputy Clay Chambers for following too closely. Wilson admitted to Chambers that he was following too closely. Chambers testified that he noticed that Wilson's hands were shaking as Wilson handed him the rental agreement for the car he was driving. Chambers ran Wilson's driver's license and tag, and decided to write Wilson a warning ticket. Chambers went back to Wilson's car, told him he was going to write him a warning and asked him to step to the rear of his vehicle. Chambers testified that although most people initially are nervous when they get stopped because they think they are going to get a ticket, they calm down once they are informed they are just being given a warning. But Wilson still appeared nervous; for this reason Chambers started talking to him about where he lived, "his trip, his itinerary, if he was going on business or vacation." He testified that Wilson also began using his cell phone and that he would not make eye contact with him. Chambers began questioning

---

[1] The possession counts were merged with the trafficking counts for sentencing.

Wilson about whether he had anything illegal in the car including various types of contraband. Chambers said Wilson kept looking at the ground and shaking his head no, although he did make eye contact with Chambers and "kind of giggled" when Chambers asked him if he had any methamphetamine or heroin. Chambers then asked Wilson for consent to search his vehicle, and when Wilson refused, Chambers stopped writing the ticket, which he had not completed at that point, and retrieved his drug detection canine out of his vehicle. The dog gave a positive alert on the vehicle, and Chambers then searched the vehicle and found what he suspected to be cocaine. Wilson was placed under arrest at that time, and Chambers continued to search the vehicle, finding what was subsequently identified as marijuana and MDMA tablets.

Wilson does not challenge the legality of the initial stop but argues on appeal that Chambers intentionally prolonged writing the warning ticket by questioning Wilson and that all business related to his traffic violation should have been concluded at the time the canine sniff was conducted. Wilson argues that intentionally prolonging the actual issuance of a citation to conduct an unrelated investigation is no different than beginning a new investigation without sufficient cause after the initial reason for the stop has been concluded and is equally impermissible under the protections of the Fourth Amendment.

Although the officer testified Wilson was nervous, Wilson is correct that "nervousness alone is not sufficient to establish reasonable suspicion to detain and investigate for illicit drug activity." (Citations and punctuation omitted.) *State v. Thompson*, 256 Ga. App. 188, 190 (569 SE2d 254) (2002). *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002). But our law is equally clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search.[2] Wilson does not contend otherwise, but argues that the duration of the stop, and, specifically, the time it took Chambers to write the warning ticket, was improperly extended by Chambers' questioning to enable the free air search of the vehicle to occur. As the United States Supreme Court has noted, "[a] seizure that is justified solely

[2] The United States Supreme Court has reiterated that
the use of a well-trained narcotics-detection dog – one that "does not expose noncontraband items that otherwise would remain hidden from public view," [*United States v.*] *Place*, 462 U. S. [696,] 707 (103 SC 2637, 77 LE2d 110) [(1983),] – during a lawful traffic stop, generally does not implicate legitimate privacy interests.
*Illinois v. Caballes*, 543 U. S. 405, 409 (125 SC 834, 160 LE2d 842) (2005). *Barnett v. State*, 275 Ga. App. 464, 466 (2) (620 SE2d 663) (2005).

by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SC 834, 160 LE2d 842) (2005).

Mere police questioning does not constitute a seizure, and

> even if police have no basis for suspecting that a person detained at a traffic stop is engaged in criminal activity unrelated to the stop, police may lawfully ask questions during the course of the stop about such unrelated activity, so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop.

*State v. Davis*, 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007). See also *Hayes v. State*, 292 Ga. App. 724, 730 (2) (d) (665 SE2d 422) (2008).

In this case, the videotape of the stop shows that a little over nine minutes had elapsed between the time of the initial stop and the canine sniff search of the vehicle and that six of those minutes consisted of the officer approaching the vehicle, obtaining the registration and rental agreement information and running a computer check. "It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration." (Citation and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 737 (632 SE2d 645) (2006). Chambers began writing the warning ticket after completing the license check, and he continued writing the warning while he questioned Wilson, pausing to adjust his flashlight several times (so that it shined on the warning ticket pad) and sometimes pausing to glance at Wilson when he asked him a question or Wilson gave him a response. Pertinently, however, the videotape further shows that only about three minutes had elapsed when Chambers stopped writing the ticket and retrieved his drug dog from his car. Because Chambers had his drug dog with him, any further delay due to retrieving the dog and conducting the walk-around of the vehicle was minimal. *Andrews v. State*, 289 Ga. App. 679, 683 (658 SE2d 126) (2008). The officer's questioning while he was completing the warning citation did not unduly prolong the duration of the stop in violation of the Fourth Amendment; the trial court, therefore, did not err by denying the motion to suppress. *Salmeron v. State*, 280 Ga. at 738-739; *Trujillo v. State*, 286 Ga. App. at 441 (2) (b). See also *State v. Sawyer*, 291 Ga. App. 462, 464 (665 SE2d 2) (2008).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 16, 2008 —
RECONSIDERATION DENIED JULY 31, 2008 — 

*Althea L. Buafo*, for appellant.

*Kelly R. Burke, District Attorney, George H. Hartwig III, Joshua D. Morrison, Assistant District Attorneys*, for appellee.