A08A1971. ST. FLEUR v. THE STATE.
(676 SE2d 243)

DOYLE, Judge.

Following a stipulated bench trial, Edward St. Fleur appeals his felony conviction of possession of marijuana,[1] contending that the trial court erred in denying his motion to suppress evidence obtained from a vehicle search during a traffic stop. Specifically, St. Fleur argues that (1) the search ensued during an unlawfully prolonged traffic stop, and (2) a pat-down search of his person rendered a subsequent "free-air sniff" by a drug dog illegal. We disagree and affirm.

---

[1] OCGA § 16-13-30 (j).

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

So viewed, the record shows that two officers in a K-9 patrol unit observed St. Fleur driving on Interstate 75 with a broken tag light and windows that appeared to be illegally tinted.[3] The officers executed a traffic stop, requested St. Fleur's driver's license, and asked him to step to the rear of his vehicle. The officers immediately noticed a strong smell of cologne and air freshener emanating from the vehicle. The officers confirmed with a measuring device that the window tint was too dark, and one officer began writing a warning for the broken tag light and checking St. Fleur's identity against a dispatch computer.

While the warning was being written, the second officer asked St. Fleur about his destination, why he seemed nervous, and whether he would consent to a search of his vehicle. St. Fleur refused to consent to a search, and the officer informed him that he would perform a free-air sniff with his drug dog. Prior to retrieving his drug dog from the patrol vehicle, the officer quickly patted down the outside of St. Fleur's clothing, finding nothing. The drug dog approached the exterior of St. Fleur's car and twice immediately "alerted" on St. Fleur's trunk. The officer put the drug dog back into the patrol car, requested St. Fleur to remain standing in front of the patrol car, and opened St. Fleur's trunk, which contained 3.9 pounds of marijuana in a plastic shopping bag. Eight minutes after initially pulling over St. Fleur, the officer arrested him.

St. Fleur was charged with felony possession of marijuana, possession of marijuana with intent to distribute, and illegal window tint. Following the denial of his motion to suppress the marijuana, St. Fleur was convicted in a stipulated bench trial of possession of more than one ounce of marijuana, and this appeal followed.[4]

1. St. Fleur contends that the search was unjustified because it occurred after the police improperly prolonged the duration of the traffic stop. We disagree.

---

[2] (Citation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] See OCGA § 40-8-73.1 (b) (2) (it is unlawful to operate a motor vehicle which has material and glazing affixed to the rear windshield or side or door windows which reduces light transmission to less than 32 percent, plus or minus 3 percent).

[4] The trial court entered a nolle prosequi on the remaining charges.

We note at the outset that St. Fleur concedes that the police had authority to initiate the traffic stop, based on their observation of the broken tag light and their suspicion of a window tint violation.[5] Instead, he argues that the officers improperly detained him during the otherwise lawful traffic stop. However, the circumstances belie this argument.

"In considering whether the length of a detention was reasonable, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[6]

> An officer who lacks reasonable suspicion of other criminal activity exceeds the scope of a permissible investigation of a traffic offense *only if he continues to detain* and interrogate the subject, or seeks consent to search, *after the conclusion of the traffic stop or after the tasks related to the investigation of the traffic violation have been accomplished.*[7]

Here, according to a videotape of the traffic stop, one officer began writing the warning on the tag light violation approximately three and one-half minutes after stopping St. Fleur. In this process, the officers checked his identity with a dispatcher.

> It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.[8]

Further, a law enforcement officer conducting "a routine traffic stop may request and examine a driver's license and . . . check for outstanding warrants . . . ,"[9] and "[q]uestioning the driver or engaging in 'small talk' while verifying the items mentioned above is not

---

[5] See *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006) (suspected illegal tint justified initial traffic stop).

[6] (Punctuation omitted.) *Pollack v. State*, 294 Ga. App. 400, 404 (3) (b) (670 SE2d 165) (2008).

[7] (Emphasis supplied.) *Rosas v. State*, 276 Ga. App. 513, 517-518 (1) (c) (624 SE2d 142) (2005).

[8] (Punctuation omitted.) *Wilson v. State*, 293 Ga. App. 136, 138 (666 SE2d 573) (2008).

[9] *Rosas*, 276 Ga. App. at 517-518 (1) (c).

a seizure unless the detention is prolonged by the questioning."[10] Leading up to the dog sniff, the entire process of speaking to St. Fleur and writing the warning took less than five minutes. Based on the short time that elapsed leading up to and during the writing of the warning, the circumstances do not present an unreasonable delay during this process.[11]

Approximately five minutes into the stop, while the written warning was still being completed, the second officer initiated the free-air sniff with the drug dog. Although St. Fleur's nervousness alone was not enough to justify further detention to investigate suspected drug activity, "our law is equally clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search."[12] As the free-air sniff occurred within five minutes of the initial stop, while the written warning was being completed, the free-air sniff did not unreasonably prolong the initial detention.[13]

2. St. Fleur also argues that the search of his vehicle was rendered illegal despite the drug dog's "alert," because the dog sniff and subsequent search followed an unjustified pat-down frisk of his person. We disagree.

Immediately prior to retrieving the drug dog from the patrol car, the officer briefly patted down St. Fleur's outer clothing to check for weapons. The officer explained at the suppression hearing that

> if I'm going to run my dog around a car, conduct a free-air sniff . . . , I'm going to be concentrating on my dog; I can't be concentrating on the person that I have stopped. So . . .

---

[10] *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c) (665 SE2d 422) (2008).

[11] See id. at 725, 731 (2) (e) (seven-minute period for writing citation and subsequent ten-minute delay after writing of citation not unreasonable).

[12] *Wilson*, 293 Ga. App. at 137. See *Illinois v. Caballes*, 543 U. S. 405, 409 (125 SC 834, 160 LE2d 842) (2005) ("the use of a well-trained narcotics-detection dog – one that does not expose noncontraband items that otherwise would remain hidden from public view – *during a lawful traffic stop*, generally does not implicate legitimate privacy interests") (citation and punctuation omitted; emphasis supplied); *Simmons*, 283 Ga. App. at 143 ("[t]he use of a drug sniffing dog to conduct a free air search around the exterior of a vehicle during the course of a lawful traffic stop does not implicate the Fourth Amendment under the United States Constitution") (punctuation omitted).

[13] The entire stop, from the moment the officers first spoke to St. Fleur to the moment he was arrested, took approximately eight minutes. See *Salmeron v. State*, 280 Ga. 735, 737 (1) (632 SE2d 645) (2006); *Hayes*, 292 Ga. App. at 731 (2) (e) (ten-minute delay); *Wilson*, 293 Ga. App. at 138 (holding that a three-minute delay between the completion of a traffic citation and the retrieval of a drug dog did not impermissibly extend the detention at a traffic stop); *Davidson v. State*, 257 Ga. App. 260, 264 (1) (570 SE2d 698) (2002); *Rosas*, 276 Ga. App. at 518 (1) (c).

I'm just going to make sure, for my safety, that the person is not armed. It's as simple as that, it's a safety thing.

Pretermitting whether this practice was justified, we note that the pat-down yielded no contraband or weapons, it took approximately ten seconds, and it was not a basis for further investigation or detention. The officers did not exploit the pat-down as a means for discovering the marijuana, and the pat-down was purely ancillary to the justification to search St. Fleur's car.[14] Accordingly, because the drug dog's sniff was lawful and provided probable cause to search St. Fleur's car,[15] the officer had authority to search the vehicle independent of the pat-down of St. Fleur's clothing. Therefore, we discern no error.[16]

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 4, 2009 —
RECONSIDERATION DENIED MARCH 23, 2009 — 

*Robert Kenner, Jr.,* for appellant.
*Scott L. Ballard, District Attorney, Gail M. Travillian, Stephen N. Knights, Jr., Assistant District Attorneys,* for appellee.

---

[14] See *McKinney v. State*, 261 Ga. App. 218, 219 (2) (582 SE2d 463) (2003) (the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint") (punctuation omitted).

[15] See *State v. Jones*, 287 Ga. App. 259, 260 (651 SE2d 186) (2007); *Davidson*, 257 Ga. App. at 264 (1) (b) ("drug dog's sniffing of the exterior of the vehicle [does] not constitute a search within the meaning of the Fourth Amendment. . . . [T]he dog's alert provided probable cause for the ensuing search") (punctuation omitted).

[16] Compare *Debord v. State*, 276 Ga. App. 110, 114 (622 SE2d 460) (2005) (suppression of contraband found pursuant to *Terry* frisk of shirt pocket was required).