### A09A0334. STAGG v. THE STATE.
(678 SE2d 108)

MILLER, Chief Judge.

Following a stipulated bench trial, William John Stagg was convicted of possession of dihydrocodeinone[1] (OCGA § 16-13-30 (a), (g)). Stagg contends that the trial court erred by denying his motion to suppress, arguing that such evidence was seized following (i) an unlawfully expanded traffic stop, and (ii) a search of his person for weapons that exceeded his consent to a pat-down search. Discerning no error, we affirm.

> We will not disturb the trial court's order on a motion to suppress if there is any evidence to support it, and we construe all evidence presented in favor of the trial court's findings and judgment. *McDaniel v. State*, 263 Ga. App. 625, 626-627 (1) (588 SE2d 812) (2003). Where, as here, the evidence was undisputed at the suppression hearing and there is no question as to the credibility of the witnesses, our review of the trial court's application of the law to the undisputed facts is de novo. *Daniel v. State*, 277 Ga. 840, 849 (5) (597 SE2d 116) (2004).

(Punctuation omitted.) *State v. Davis*, 288 Ga. App. 164 (653 SE2d 311) (2007).

The record shows that on August 14, 2006, an officer employed by the Forsyth County Sheriff's Office executed a traffic stop on a vehicle driven by Cory Willis for driving 50 miles per hour in a 35 mile per hour zone in Forsyth County. After asking Willis and his passenger, Stagg, for their driver's licenses, the officer asked them where they were going. Willis, who produced his license, responded that they were en route to Memphis Street, an area known to the officer as a high crime area involving drugs and burglaries. Stagg indicated that his license had been stolen, but offered to provide his name and personal information. The officer asked Willis to step out of the vehicle, and upon further questioning, Willis explained that the contents of the vehicle included knives, a BB gun, and a paint gun belonging to him. Willis also gave his consent to a search of his person which was negative for weapons or contraband. Thereafter, the officer advised Willis that he had a right to a calibration check of the radar detection equipment, and Willis requested the same. Aware of the presence of weapons in the vehicle and concerned for his safety, the officer asked Stagg to get out of the vehicle and requested

---

[1] Dihydrocodeinone is a Schedule III controlled substance. OCGA § 16-13-27 (4) (D).

YALE LAW LIBRARY

Stagg's voluntary consent to search his person for "any guns, knives, needles, or weapons, anything that might hurt [him]." In the search that followed, the officer recovered a deck of cards used in a card game, the object of which was to determine who could "grow the most marijuana." Behind a package of cigarettes in Stagg's right front pocket, the officer also found a plastic baggie containing a number of pills. Stagg stated, and later testing confirmed, that the baggie contained dihydrocodeinone. Stagg's arrest followed. The video of record indicates that Stagg's arrest occurred nine minutes into the traffic stop. The officer had not yet afforded Willis the radar check he had requested or written a citation for speeding.

1. Stagg contends that his motion to suppress should have been granted because the traffic stop at issue was illegally expanded by questioning unrelated to the reason for the stop, presumably inclusive of the officer's request for his consent to search his person.[2] Stagg argues that the officer lacked a reasonable, articulable suspicion that he was engaged in criminal activity. We disagree.

> [T]he Fourth Amendment is not violated when, when during the course of a valid traffic stop, an officer requests of the driver consent to conduct a search. If a driver is questioned and gives consent while [he] is being lawfully detained during a traffic stop, there is no Fourth Amendment violation.

(Punctuation omitted.) *Blitch v. State*, 281 Ga. 125, 125-126 (1) (636 SE2d 545) (2006), citing *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). Thus, the validity of questions asked during a valid traffic stop is not contingent upon the presence of a reasonable, articulable suspicion of criminal activity. Further, an officer's authority to request consent to search during a valid traffic stop extends to drivers and passengers alike. *State v. Gooch*, 266 Ga. App. 746, 747-748 (598 SE2d 341) (2004).

Here, the validity of the traffic stop is uncontroverted. At the time of Stagg's arrest, the traffic stop was only nine minutes old, Willis' request for a radar check remained outstanding, and no citation for the speeding offense which prompted the traffic stop had been issued. Given the foregoing, the trial court did not err in denying Stagg's motion to suppress grounded upon the claim that his consent to search and the seizure occurred during an unlawfully expanded traffic stop.

2. Alternatively, Stagg contends that the seizure at issue should have been suppressed because the search of his person for weapons

---

[2] We infer this conclusion upon the overall tenor of Stagg's appellate brief.

exceeded the scope of his consent to a pat-down search.

The scope of a consent to search

> must be measured by all of the circumstances and not only what a person says in response to a request. The type, duration, and physical zone of intrusion is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?

(Citation and punctuation omitted.) *Springsteen v. State*, 206 Ga. App. 150, 152 (424 SE2d 832) (1992).

Contrary to Stagg's assertion that he only consented to a pat-down, the record shows that Stagg agreed to a general request for consent to search his person for guns, knives, needles, or weapons. Given the foregoing, we find that a reasonable person would have understood that Stagg agreed to a search of his person for weapons which extended to all the contents of his pockets, including the right front pocket in issue. Even had Stagg given his consent to a pat-down search only, an officer in such a circumstance is authorized to reach into a suspect's pocket upon feeling a bulge such as that made by the package of cigarettes in Stagg's pocket. *Springsteen*, supra, 206 Ga. App. at 152-153. Moreover, a limited protective search of the person is permissible where, as here, a reasonable belief exists that the officer's safety or that the safety of others is at risk based upon the possible presence of weapons in close proximity to or on the person of the suspect. *State v. McKinney*, 265 Ga. App. 322, 324-325 (593 SE2d 865) (2004).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 29, 2009.

*Jeffrey W. Frazier*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.