A09A1161. SOMMESE v. THE STATE.
(683 SE2d 642)

BERNES, Judge.

Julie Cay Sommese was convicted of possession of methamphetamine in a stipulated bench trial. She appeals, contending that the

---

[5] See *Brower v. State*, 230 Ga. App. 125, 126 (1) (495 SE2d 600) (1998).
[6] See *Ransom v. State*, 293 Ga. App. 651, 653 (667 SE2d 686) (2008).

trial court erred in denying her motion to suppress the methamphet-amine seized from her purse during a traffic stop. Because the traffic stop was not unreasonably prolonged and Sommese voluntarily consented to the search of her purse, we affirm.

> In reviewing the grant or denial of a motion to sup-press, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evi-dence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous. The trial court's application of law to undisputed facts, however, is subject to de novo review.

(Punctuation and footnotes omitted.) *Andrews v. State*, 289 Ga. App. 679, 679-680 (658 SE2d 126) (2008).

So viewed, the evidence showed that while on evening patrol, an officer with the Snellville Police Department stopped at the same traffic light as the vehicle driven by Sommese. Sommese's vehicle had two additional occupants and a Texas license plate. While stopped at the traffic light, the officer noticed that the windows of Sommese's vehicle had a very dark tint. The officer also saw the front seat passenger of the vehicle reach out of the front window and pour beer out of a bottle onto the ground. Based on these observa-tions, the officer initiated a traffic stop.

The officer approached the vehicle and explained to the occu-pants that he had made the stop because of the illegally dark window tint[1] and the open alcoholic beverage container in the vehicle.[2] The front seat passenger apologized for pouring out the beer. She stated

---

[1] OCGA § 40-8-73.1 (b) provides:
    (b) Except as provided in this Code section, it shall be unlawful for any person to operate a motor vehicle in this state:
    (1) Which has material and glazing applied or affixed to the front windshield, which material and glazing when so applied or affixed reduce light transmission through the windshield; or
    (2) Which has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent, or increase light reflectance to more than 20 percent.
Sommese does not challenge the officer's testimony that the window tint of her vehicle violated the statute.

[2] OCGA § 40-6-253 (b) (1) provides:
    (b) (1) A person shall not:
    (A) Consume any alcoholic beverage; or
    (B) Possess any open alcoholic beverage container
in the passenger area of any motor vehicle which is on the roadway or shoulder of any public highway.

that the beer had been consumed earlier that day, and she handed the bottle to the officer. The bottle was warm to the touch. The officer then asked the occupants for identification. Sommese provided a Texas driver's license but informed the officer that she lived in Loganville. The front seat passenger provided a Florida driver's license. The rear seat passenger informed the officer that he was from Texas.

Because the beer bottle had been warm to the touch and the front seat passenger was from out of state, the officer decided to issue a written warning to the passenger for the open container violation rather than a citation. Since the front seat passenger was from another state, the officer also decided to explain to her and the other occupants the specifics of Georgia's open container law so that they would avoid any problems in the future.

While speaking to the occupants, the officer noted that Sommese was "overly nervous." Sommese was breathing heavily, her hands were shaking, her speech was very fast, and she was continuously rubbing her face and scratching her nose as if she had recently taken a stimulant. Because Sommese's extreme nervousness made him feel uneasy, the officer returned to his patrol vehicle and called for back-up.

While in his patrol vehicle, the officer began running a computer check on the licenses and vehicle registration as well as a check for outstanding warrants and criminal histories on the occupants. The officer also began writing out a warning citation to the front seat passenger for the open container violation. While writing out the warning citation, the officer learned from his computer check that Sommese had a previous felony drug charge in Texas.

The officer returned to Sommese's vehicle and issued the front seat passenger the warning citation. Because Sommese had told the officer that she lived in Loganville but her vehicle had a Texas license plate and she had a Texas driver's license, the officer decided to question her about the length of time she had lived in Georgia. In this regard, the officer wanted to determine if Sommese was in compliance with the driver's license and vehicle registration requirements of this state.[3] Before questioning Sommese, the officer directed her to step to the rear of her vehicle, and she complied.

Sommese informed the officer that she had lived in Georgia between one and two months. The officer then advised her that in addition to a warning citation for the window tint violation, he was

---

[3] Any person who is a Georgia resident for 30 days or more must obtain a Georgia driver's license before he or she can operate a motor vehicle in the state. OCGA § 40-5-20 (a). "[A] person shall register his or her motor vehicle within 30 days after becoming a resident of this state." OCGA § 40-2-8 (a).

going to issue her a warning citation for violating Georgia's license and registration requirements.

As they stood at the rear of the vehicle, the officer began writing out the warning citations to Sommese, who remained extremely nervous. While writing out the warning citations, the officer asked Sommese about her driving record and whether she had ever been arrested. Sommese claimed that she had never been arrested. The officer also asked her if she had any illegal drugs in her vehicle. Sommese averted her eyes to the ground and again said no.

At that point, the officer's back-up arrived. The officer continued writing out Sommese's warning citations. The officer asked Sommese if the back-up officer could search her vehicle for other open containers. Sommese consented. She then walked to the driver's side window of her vehicle, reiterated out loud that the search would be for "[o]pen containers, open containers, open containers," and reached inside the vehicle to zip up an open bag in her purse lying on the floorboard.

Sommese and the other two occupants were ordered to the rear of the vehicle so that the search for open containers could be conducted. While the back-up officer was conducting the search for open containers, the other officer asked Sommese why she had told him she had never been arrested, given her prior felony drug charge in Texas. Sommese admitted that she had lied about having never been arrested. The officer also informed Sommese that he had noticed her effort to seal the bag inside her purse before the open container search was conducted. The officer then asked Sommese if he could search her purse to make sure there was nothing illegal inside of it, and she consented. The officer's conversation with Sommese and request for consent to search her purse occurred while he was finishing the written warning citations.

The officer returned to Sommese's vehicle and retrieved the purse from the floorboard. His search of the purse revealed a glass pipe with white residue in it and a bag containing two grams of crystal methamphetamine. The officer called over the back-up officer, who at that point discontinued his open container search. Sommese was arrested for drug possession, after which she was given the written warnings for the window tint violation and the license and registration violations.

Sommese was charged by accusation with possession of methamphetamine, and she moved to suppress the drugs seized from her purse. She argued that the traffic stop was impermissibly prolonged and that her consent to the search of her purse was not voluntarily given. Following an evidentiary hearing in which the two officers

testified to the events as set out above,[4] the trial court denied the motion. A bench trial was conducted on stipulated facts, and the trial court found Sommese guilty. Sommese now appeals from the judgment of conviction and sentence, enumerating as error the denial of her motion to suppress.

1. Sommese first contends that her motion to suppress should have been granted because she was subjected to an unreasonably prolonged detention. She does not challenge the validity of the initial traffic stop or of her detention up to the point where the officer issued the open container warning citation to the front seat passenger. Rather, Sommese claims that the officer unreasonably prolonged the detention from that point forward because instead of immediately issuing the warning citation for the window tint violation, he (a) directed her out of the vehicle; (b) asked her multiple questions unrelated to the purpose of the traffic stop; (c) waited for back-up to arrive; and (d) sought consent to search her vehicle for open containers. Consequently, Sommese maintains that the methamphetamine seized from her purse should have been suppressed as fruit of an illegal detention. We disagree.

"The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (Citations and punctuation omitted.) *State v. McMichael*, 276 Ga. App. 735, 736-737 (1) (624 SE2d 212) (2005). In order to pass constitutional muster, the investigative stop of a vehicle cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop. *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). Once that purpose has been fulfilled, the continued detention of the vehicle and its occupants is constitutional only if "the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter." (Citation and punctuation omitted.) *Giles v. State*, 284 Ga. App. 1, 3 (1) (642 SE2d 921) (2007). Guided by these principles, we conclude that the responding officer did not unreasonably prolong the traffic stop of Sommese's vehicle beyond the time required to fulfill the purpose of the stop.

(a) As an initial matter, the officer did not unreasonably expand the scope or duration of the traffic stop by ordering Sommese from

---

[4] The front seat passenger also testified at the hearing, but the trial court, as the trier of fact on a motion to suppress, was authorized not to credit her version of events. See *State v. McKinney*, 276 Ga. App. 69, 73 (1), n. 3 (622 SE2d 429) (2005) ("On a motion to suppress, the credibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony are solely the province of the trial judge.") (citation and punctuation omitted).

her vehicle after issuing the open container warning citation to the front seat passenger. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U. S. 106, 111 (2), n. 6 (98 SC 330, 54 LE2d 331) (1977) (per curiam). See also *Salmeron*, 280 Ga. at 736 (1). The officer's ordering of Sommese from her vehicle thus "was an extension of the constitutionally valid detention resulting from the traffic stop." *Salmeron*, 280 Ga. at 737 (1). See also *Hayes v. State*, 292 Ga. App. 724, 730 (2) (e) (665 SE2d 422) (2008).

(b) Nor did the officer unreasonably expand the scope or duration of the traffic stop by questioning Sommese about matters unrelated to the stop. A reasonable time to conduct a traffic stop

> includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning. A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.

(Citations and footnotes omitted.) *Hayes*, 292 Ga. App. at 729 (2) (b). While carrying out these tasks, an officer may ask the driver questions wholly unrelated to the traffic stop or otherwise engage in "small talk" with the driver, "so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop." *State v. Davis*, 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007). See *Salmeron*, 280 Ga. at 737-739 (1); *Wilson v. State*, 293 Ga. App. 136, 138 (666 SE2d 573) (2008); *Hayes*, 292 Ga. App. at 729 (2) (c). If the traffic stop is not unreasonably prolonged, the validity of unrelated questioning "is not contingent upon the presence of a reasonable, articulable suspicion of criminal activity" apart from the original grounds for the traffic stop. *Stagg v. State*, 297 Ga. App. 640, 641 (1) (678 SE2d 108) (2009). Moreover, we will defer to the trial court's finding that the officer's questioning did not unreasonably prolong the traffic stop "unless the facts are truly egregious." *Hayes*, 292 Ga. App. at 729 (2) (c).

Here, before completing the warning citation for the window tint violation, the officer questioned Sommese regarding how long she had lived in Georgia and about her driving record. The Supreme Court of Georgia has held that

> [i]t does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to

immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.

(Citation omitted.) *Salmeron*, 280 Ga. at 737 (1). The officer's questioning of Sommese concerning her length of time in Georgia and her driving record was for the purpose of determining the status of her license and registration. See OCGA §§ 40-2-8 (a); 40-5-20 (a). Therefore, the questioning did not unreasonably expand the scope or duration of the stop. See *Salmeron*, 280 Ga. at 737 (1).

Additionally, while completing the warning citations for the window tint violation and the license and registration violations, the officer questioned Sommese about her arrest record and asked her whether there were any illegal drugs in the vehicle. Such questioning likewise did not unreasonably prolong the traffic stop. See *Davis*, 283 Ga. App. at 201-203 (2) (officer's questioning of driver about whether there was contraband in vehicle as he wrote out warning citation did not unreasonably prolong traffic stop); *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005) (officer does not unreasonably prolong a traffic stop by checking the criminal histories of the driver and vehicle occupants).

(c) While Sommese further claims that the traffic stop was unreasonably prolonged by the officer waiting for back-up, the record shows that the officer was busy engaged in other tasks until back-up arrived and had not yet completed the paperwork for all of the warning citations. Hence, the traffic stop was otherwise still in progress when back-up arrived and was not expanded in terms of duration or scope. See, e.g., *Bowens v. State*, 276 Ga. App. 520, 521 (623 SE2d 677) (2005) (detention not unreasonably prolonged when back-up officer arrived on scene and conducted free air search around vehicle with drug-sniffing dog, where the initial traffic stop was still in progress at the time of the officer's arrival and free air search).

(d) Contrary to Sommese's assertion, the officer did not unreasonably prolong the traffic stop by asking for and obtaining her consent to perform a search of her vehicle for open containers. The record shows that the officer obtained consent to search her vehicle before he had completed the warning citation for the window tint violation, and there was no evidence that the officer lengthened the detention in order to coerce Sommese into giving her consent. Requesting and obtaining Sommese's consent to the search of her vehicle prior to fulfilling the initial purpose of the traffic stop did not violate the Fourth Amendment. See *Blitch v. State*, 281 Ga. 125, 125-126 (1) (636 SE2d 545) (2006); *Salmeron*, 280 Ga. at 736 (1);

*Carnes v. State*, 293 Ga. App. 549, 551 (667 SE2d 620) (2008).

For these combined reasons, the trial court correctly found that Sommese's detention by the officer was not unreasonably prolonged beyond the time necessary to fulfill the initial purpose of the traffic stop. As such, we need not address whether the officer had articulable suspicion of other illegal activity or whether the stop had become consensual at the time consent to search was obtained.

2. Sommese next contends that her motion to suppress should have been granted because her consent to the search of her purse was not freely and voluntarily given. Again, we disagree.

> It is well settled that a valid consent to a search eliminates the need for either probable cause or a search warrant. In order to justify a warrantless search on the grounds of consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances.

(Citations and punctuation omitted.) *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009).

The record supports the trial court's conclusion that the state carried its burden to prove that Sommese's consent to the search of her purse was voluntary under the totality of the circumstances. The officer testified that he sought and obtained Sommese's consent before he completed the warning citation for the window tint violation, and thus before the purpose of the valid traffic stop had been fulfilled. According to the officer, he never led Sommese to believe that she was required to consent to the search. The officer further testified that Sommese never withdrew her consent to the search. Nor was there any evidence that the officer used fear, intimidation, threat of physical punishment, or otherwise lengthened the detention in order to coerce Sommese into giving her consent. Compare *Cuaresma v. State*, 292 Ga. App. 43, 46-47 (2) (663 SE2d 396) (2008). The mere presence of more than one police officer on the scene, furthermore, was not evidence of coercion. See *Davis*, 283 Ga. App. at 204 (2). Under these circumstances, Sommese's consent was valid and did not violate the Fourth Amendment. See *Salmeron*, 280 Ga. at 736 (1); *Carnes*, 293 Ga. App. at 551; *Noble v. State*, 283 Ga. App. 81, 83-84 (2) (640 SE2d 666) (2006).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED AUGUST 10, 2009.

*Charles D. Joyner, James H. Wall*, for appellant.

*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.