A09A2142. LANGSTON v. THE STATE.
(691 SE2d 349)

MILLER, Chief Judge.

Following a stipulated bench trial, the trial court convicted Carlton Langston of trafficking in cocaine (OCGA § 16-13-31 (a)). Langston now appeals from the trial court's judgment of conviction and sentence, arguing that the trial court erred in denying the motion to suppress cocaine evidence recovered from a rental vehicle he was driving when a law enforcement officer pulled him over for speeding. Finding, contrary to Langston's arguments, that the cocaine evidence was not the fruit of an unlawful detention, we affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's appli-

cation of the law to undisputed facts is subject to de novo appellate review.

(Footnote and punctuation omitted.) *St. Fleur v. State*, 296 Ga. App. 849, 850 (676 SE2d 243) (2009).

So viewed, the record shows that on the morning of November 11, 2005, Lieutenant Todd Dent, a deputy sheriff with the Taliaferro County Sheriff's Office, was on patrol along Interstate 20 when he initiated a traffic stop of a black Dodge Charger driven by Langston after determining, by radar, that the vehicle was traveling at approximately 87 miles per hour, in violation of the posted speed limit of 70 miles per hour. The traffic stop was recorded by video equipment installed in Dent's patrol car.[1]

Langston was holding his driver's license and a rental car agreement when Dent approached the driver's side window. Dent asked Langston to exit the Charger and step to the rear of the vehicle. Dent conducted a "pat down" of Langston for weapons. Langston admitted to driving between 80 and 81 mph. Dent then questioned Langston about his rental car agreement, which indicated that the vehicle should have been returned on November 3, 2005. Langston stated that he had another rental car agreement in the vehicle, but Dent, out of concern for his own safety, would not allow Langston to retrieve it.

After speaking with Langston for approximately three minutes, Dent went back to his patrol car and requested a check on Langston's license. While waiting for a response from his dispatcher, Dent retrieved his drug dog and walked the dog around the Charger. After the dog alerted on the vehicle, Dent searched the Charger and recovered a plastic bag later determined to contain approximately 52 grams of cocaine with a purity level of 88.9 percent. The dispatcher responded to Dent's license check request after the drug dog had alerted. Following the recovery of the cocaine, Langston was arrested on charges of possession of cocaine and trafficking in cocaine and was cited for speeding. The video of the incident reflects that approximately six-and-a-half minutes elapsed from the time Dent approached the driver's side window of the car until he finished walking his drug dog around the vehicle.

Langston does not dispute that Dent, based on his personal observation of a speeding violation, was authorized to conduct an investigatory stop of Langston's rental car. *Bell v. State*, 295 Ga. App. 607, 610 (2) (672 SE2d 675) (2009) (officers authorized to stop

---

[1] The audio function of Dent's video equipment was not working properly, and the conversations between Dent and Langston on the roadside are not audible on the video of the incident.

vehicle upon observing speeding violation); *Stearnes v. State*, 261 Ga. App. 522, 524 (2) (583 SE2d 195) (2003) (officer entitled to conduct traffic stop after observing even minor traffic violation). Instead, Langston appears to argue that Dent unlawfully detained him by asking him to step out of his vehicle and otherwise unreasonably prolonged the traffic stop.

"The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (Citation, punctuation and emphasis omitted.) *Woodard v. State*, 289 Ga. App. 643, 646 (1) (a) (658 SE2d 129) (2008). "To comply with the Fourth Amendment, the investigative stop of a vehicle cannot be prolonged beyond the time reasonably required to fulfill the purpose of the stop." (Citation omitted.) Id.; *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006); *Wilson v. State*, 293 Ga. App. 136, 137 (666 SE2d 573) (2008). If a police officer "continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop." (Citation, punctuation and emphasis omitted.) *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009). Under the circumstances, we conclude that Dent did not unreasonably prolong the traffic stop of Langston's rental vehicle such that a reasonable suspicion of other criminal activity, apart from the traffic violation, was required.

Langston argues that a reasonable suspicion of other criminal activity was required as soon as Dent asked Langston to step outside of the Charger. Langston is incorrect. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U. S. 106, 111, n. 6 (98 SC 330, 54 LE2d 331) (1977); see also *Arizona v. Johnson*, ___ U. S. ___ (129 SC 781, 786, 172 LE2d 694) (2009). "Thus, ordering [Langston] from the car was an extension of the constitutionally valid detention resulting from the traffic stop." *Salmeron*, supra, 280 Ga. at 737 (1); *Sommese v. State*, 299 Ga. App. 664, 669 (1) (a) (683 SE2d 642) (2009).[2]

---

[2] Langston's reliance on *State v. Lanes*, 287 Ga. App. 311 (651 SE2d 456) (2007), is misplaced. *Lanes* addressed a situation in which a police officer approached a parked vehicle at a gas station and, after questioning the driver, asked the driver to get out of the vehicle. Id. at 311. The State conceded that "once the officer asked [the defendant] to step out of the car, the encounter became a 'tier two' *Terry* stop, requiring a reasonable articulable suspicion of criminal conduct." (Punctuation omitted.) Id. at 312. Unlike *Lanes*, this case involved a valid

Dent did not otherwise unreasonably expand the scope or duration of the traffic stop. After Dent conducted a 13-second pat-down of Langston,[3] and Langston admitted to speeding, Dent proceeded to examine Langston's license and rental agreement and inquire about the rental agreement's apparent expiration.

> It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.

(Footnote omitted.) *St. Fleur*, supra, 296 Ga. App. at 851 (1). On discovering that Langston's rental agreement reflected that the car should have been returned eight days before, Dent was authorized to detain Langston to "investigate whether [he] was in lawful possession of the vehicle." *Woodard*, supra, 289 Ga. App. at 647 (1) (a).

After conversing with Langston, Dent returned to his patrol car to run a check on Langston's license. "An officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents." (Citation and punctuation omitted.) *Fernandez v. State*, 275 Ga. App. 151, 157 (3) (b) (i) (619 SE2d 821) (2005). Thus, running a check on Langston's license did not unreasonably prolong the traffic stop. *Sommese*, supra, 299 Ga. App. at 669 (1) (b). Nor did Dent's decision to walk his drug dog around the Charger affect the validity of Langston's detention. "The use of a drug sniffing dog to conduct a free air search around the exterior of a vehicle during the course of a lawful traffic stop does not implicate the Fourth Amendment under the United States Constitution." (Citation and punctuation omitted.) *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006). "[O]ur law is . . . clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search." (Punctuation and footnote omitted.) *St. Fleur*, supra, 296 Ga. App. at 852 (1) (free air sniff conducted within five minutes of initial stop and while written warning was being

---

initial detention for a speeding violation.

[3] Pretermitting whether a pat-down was warranted by a reasonable suspicion that Langston was armed and dangerous (*Arizona*, supra, 129 SC at 784), given its brevity, the pat-down did not unreasonably extend the duration of the traffic stop. The pat-down, moreover, yielded no evidence and "was not a basis for further investigation or detention." *St. Fleur*, supra, 296 Ga. App. at 853 (2). Accordingly, we note that, even if unjustified, the pat-down did not taint the subsequent search of the Charger. Id.

completed did not unreasonably prolong initial detention). Dent did not prolong the stop in order to conduct an open air search because he did not receive the results of the license check until after the dog had alerted on the Charger. Once the dog alerted, Dent had probable cause to search the vehicle. *Simmons*, supra, 283 Ga. App. at 143.

For the reasons set forth above, we affirm the trial court's judgment of conviction and sentence.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 1, 2010.

*Guy J. Notte*, for appellant.

*Dennis C. Sanders, District Attorney, Kevin R. Majeska, Assistant District Attorney*, for appellee.