## A05A1520. THE STATE v. WHITT.
### (625 SE2d 418)

ADAMS, Judge.

The State appeals from the trial court's order granting defendant Keith P. Whitt's motion to suppress.

The State does not challenge the trial court's factual findings, but argues that the trial court misapplied and misinterpreted the law by holding that once an officer concludes a traffic stop and tells a suspect he is free to leave, the officer cannot continue to lawfully detain a suspect unless the officer develops a reasonable, articulable suspicion of other criminal activity based on facts and circumstances not known or present during the initial investigation. In other words, if the officer concludes the traffic stop and tells a suspect he is free to leave, then the officer has necessarily concluded that the facts known to the officer at that point do not justify a continued detention based on reasonable suspicion of criminal activity. We agree that to the extent the trial court's order can be so construed, it misinterprets the law governing when a continued or second detention is legally permissible. "In reviewing a trial court's decision on a motion to suppress where the evidence was uncontroverted and no question regarding the credibility of witnesses was presented, an appellate court must conduct a de novo review of the trial court's application of law to the undisputed facts." (Citations omitted.) *Daniel v. State*, 277 Ga. 840, 849 (5) (597 SE2d 116) (2004).[1]

Our law is clear that a continued or "second" detention is authorized under certain circumstances:

> Once the underlying basis for the initial traffic stop has concluded, it does not automatically follow that any further detention for questioning is unconstitutional. Fourth Amendment jurisprudence has clarified that (l)engthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. (Cit.) Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. [Cits.]

*Daniel*, 277 Ga. at 841 (1).

---

[1] *Daniel* concerned the second circumstance, a consensual encounter. In the case at hand, there is no question that the driver did not consent to the search of the vehicle.

Both the trial court and Whitt rely on *State v. Hanson*, 243 Ga. App. 532 (532 SE2d 715) (2000) to support the proposition that once the stop ended the officer could not detain the individuals without some newly formed articulable suspicion. However, in *Hanson*, the stop was not based on the observation of a traffic offense, but rather the officer's suspicion that the driver might be driving under the influence. Thus, the scope of the stop was more limited at the outset, and once the officer's suspicion that the driver was under the influence was eliminated, the officer had no other justification for prolonging the stop. Id. at 539-540. In contrast, in this case, it is without dispute that the initial stop was based on the officer's direct observation of a traffic offense. Thus, there is no question that the officer was authorized to initiate the stop, investigate the violation and issue the appropriate citation. Once that was concluded, the officer was authorized to continue to detain the driver and Whitt, but only if there existed a reasonable, articulable suspicion of *other* criminal activity. "[A]n officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told the motorists they are free to go." (Citations and punctuation omitted.) *Anderson v. State*, 261 Ga. App. 657, 659 (583 SE2d 511) (2003).

> [T]o justify additional questioning of a driver and the search of his vehicle following a routine traffic stop, an officer must have reasonable suspicion of criminal conduct. To satisfy this "reasonable suspicion" standard, the officer's investigation must be justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Although this suspicion need not meet the higher standard of probable cause, it must be more than a mere caprice or a hunch. In sum, when a traffic stop has been completed and the officer *questions and detains* a suspect for other reasons, he must have reasonable suspicion of other criminal activity.

(Citations, punctuation and footnotes omitted; emphasis in original.) *Padron v. State*, 254 Ga. App. 265, 268 (1) (562 SE2d 244) (2002).

The following facts pertinent to this issue were established at the motion to suppress hearing: Brian Hobbs, a deputy with the Crisp County Sheriff's Office assigned to the criminal Apprehension Team testified that he was operating stationary radar on I-75 when he observed a vehicle approaching at a very high rate of speed. He verified that the vehicle was traveling at a speed of 90 mph in an area

where the posted speed limit was 60 mph. He said the driver of the vehicle would not make eye contact as he passed him, and that he found this behavior suspicious since "most people when they see a law enforcement officer sitting in the median, the first thing they do is take their foot off the accelerator and stop and look at you."

Officer Hobbs notified another officer who was ahead of him on the highway that there was a car coming up behind him at a high rate of speed. However, the vehicle slowed to well below the speed limit and did not come alongside the other officer's car. Meanwhile, Officer Hobbs caught up with the vehicle and initiated the traffic stop.

Officer Hobbs said in addition to the driver of the vehicle, Lajoseph C. Carter, there was one passenger, who was subsequently identified as appellee Keith Whitt. Officer Hobbs asked the driver to step back with his driver's license. Officer Hobbs observed Whitt "slump" down in the passenger's seat and position himself so that he could see the officer in the passenger's sideview mirror. Whitt was also talking on his cell phone. The officer said this behavior was suspicious to him in that Whitt appeared to be attempting to position himself so the officer could not see him.

Officer Hobbs testified that Carter admitted he was speeding, but told the officer he did not want to slow down too quickly so he would not look "suspicious." Hobbs said this comment raised his suspicion of criminal activity. Carter produced a New Jersey driver's license, but the car had a Georgia license plate. Carter told Hobbs it was a rental car, and gave Hobbs a copy of the rental agreement. Neither Carter nor Whitt was listed on the rental agreement.

Officer Hobbs asked Carter his passenger's name, and Carter shrugged his shoulders and said "Free." Hobbs asked Carter if he knew "Free's" name and Carter again shrugged his shoulders and responded he thought his passenger's name was Keith. He admitted he really did not know his passenger's name. He also told the officer he was not sure where they were headed, except to indicate toward Florida. Carter attempted to approach Whitt, who was still slumped down and looking at the officer through the mirror. Carter instructed Whitt to make a call to tell someone they would be late.

Officer Hobbs testified that he then explained to Carter the reason for the stop, wrote a citation and explained how to take care of the citation. He said Carter was nervous, still trying to make contact with Whitt, and Whitt continued to look at him through the mirror. Officer Hobbs said he repositioned Carter, and when he did so Whitt adjusted his view so he could still see Hobbs. Officer Hobbs said this raised his suspicion "as to why he was so deadlocked on me."

Officer Hobbs testified he told Carter he was free to leave after he gave him the citation, but as Carter walked back to his car he asked Carter if he could talk to him for a few minutes. Carter indicated his

assent by nodding his head yes, and walked back to where Hobbs was standing. Hobbs explained to him that part of his job was traffic safety and part was drug interdiction, and he asked Carter if he had anything of that nature in his vehicle. Hobbs said Carter hesitated, looked around, and he told Carter it was a yes or no question. Hobbs asked for permission to search the vehicle and Carter responded with "some statement like we're straight or we're okay." Officer Hobbs again told Carter it was a yes or no question. Carter told Hobbs he would not consent to the vehicle being searched.

Officer Hobbs called for the canine unit, and they arrived about 12 minutes later. The canine dog alerted on both the driver's and passenger's side of the vehicle. A subsequent search of the vehicle revealed suspected marijuana totaling approximately four pounds.

In granting the motion to suppress, the trial court pointed only to the evidence of nervousness and the lack of an authorized driver in the rental agreement to find insufficient basis of reasonable articulable suspicion of criminal activity. Although this Court has held that nervousness alone does not establish reasonable suspicion to detain and investigate for criminal activity, e.g., *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) and likewise found that nervousness coupled with minor problems with a rental agreement do not give rise to a reasonable suspicion of criminal activity, e.g., *State v. Whitlow*, 253 Ga. App. 149, 151 (558 SE2d 736) (2002) (physical precedent only) in this case the officer articulated additional factors to justify the continued detention. At the hearing, the officer summarized why he asked for consent to search:

> I had several suspicions about the vehicle, we had two subjects in a vehicle that's been riding from Atlanta with a Georgia tag, it's a rental car. The driver knew where he was coming from because he had just left from there. He didn't know his passenger and wasn't real sure where he was going and kept wanting to make contact with the passenger to see exactly where they [were] going and he kept telling the passenger to call somebody because they [were] running late. You know, the passenger kept slumping down and making eye contact with me, therefore, I felt like it was a safety issue. You know, most people just sit up in a vehicle, let them write[ ] the ticket and let's go on our way. He kept making eye contact and kept talking on the car phone. . . . [W]ith all the suspicions and what we call indicators, I felt like that was enough reasonable suspicion to call for a canine unit.

We agree that the facts here gave rise to a reasonable articulable suspicion of criminal activity. In addition to the nervousness of the driver and absence of an authorized driver under the rental agreement, the driver admitted to the officer that he did not want to appear "suspicious." He exhibited an inexplicable lack of knowledge concerning both his destination and his passenger's identity. His passenger, appellee Whitt, positioned himself so as to avoid being seen by the officer, while at the same time making sure that he kept the officer in view. This furtive conduct made the officer concerned for his safety and made him suspicious of criminal conduct. Although any one of these factors standing alone may have been insufficient to justify a continued detention, based on the totality of the circumstances here, we conclude that Officer Hobbs had a reasonable, articulable suspicion of criminal activity based on more than a mere hunch or inclination, and his continued detention of the suspects was therefore lawful. *Anderson v. State*, 261 Ga. App. at 659 (continued detention following initial traffic stop justified by articulable suspicion of criminal activity based on suspects' unusual nervousness and conflicting stories); *Wiggins v. State*, 258 Ga. App. 703, 705 (3) (574 SE2d 896) (2002) (further investigation justified based on driver's nervousness, lack of a valid driver's license or Social Security number and conflicting stories about his destination); *State v. Hall*, 235 Ga. App. 412, 415-416 (509 SE2d 701) (1998) (physical precedent only) (vague and conflicting responses sufficient to authorize continued detention once traffic stop had ended); *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996) (further investigation justified by driver's nervousness and driver and passenger gave conflicting accounts of travel itinerary); *Roundtree v. State*, 213 Ga. App. 793, 794 (446 SE2d 204) (1994) (continued detention justified based on conflicting accounts of driver and passenger and increasing nervousness of driver). Cf. *Migliore v. State of Ga.*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999) (continued detention unlawful where occupants were merely nervous and statements contained meaningless inconsistencies); *Parker v. State*, 233 Ga. App. 616, 618 (1) (504 SE2d 774) (1998) (continued detention unauthorized where the only evidence of reasonable suspicion was nervousness of vehicle's occupants and the officer asked for consent to search " 'just for the hell of it' ").

The trial court's order granting Whitt's motion to suppress is reversed.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 —

54

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellant.
*John W. Sherrer, Jr.*, for appellee.