A08A1814. HUGHES v. THE STATE.
(667 SE2d 163)

BLACKBURN, Presiding Judge.

Following a bench trial, David Hughes appeals his conviction of possession of methamphetamine with intent to distribute,[1] possession of a firearm during the commission of a drug offense,[2] and carrying a concealed weapon.[3] Specifically, Hughes contends that the trial court erred in denying his motion to suppress evidence discovered and seized after a traffic stop.[4] Because the initial traffic stop was justified, and because Hughes voluntarily consented to the subsequent searches giving rise to the discovery of contraband, we affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's appli-

---

[19] See id.
[1] OCGA § 16-13-30 (b).
[2] OCGA § 16-11-106 (b) (4).
[3] OCGA § 16-11-126 (a).
[4] Although Hughes's appellate brief fails to fully conform to Court of Appeals Rule 25, in furtherance of the policy to reach the merits of cases on appeal, we exercise our discretion to address the arguments in his brief.

cation of the law to undisputed facts is subject to de novo appellate review.[5]

(Citations omitted.) *Vansant v. State*.[6]

So viewed, the evidence from the suppression hearing shows that two police officers, who were surveilling Hughes based on a tip from a confidential informant, followed Hughes as he got in his car and drove to a destination. As Hughes drove, the officers noticed that Hughes was not wearing a seat belt, and, upon radioing Hughes's tag number to dispatch, the officers learned that Hughes's vehicle lacked insurance. The officers, who wore plain clothes and police badges, activated the blue lights and siren on their unmarked vehicle and followed Hughes. Hughes continued for approximately a quarter mile, made a turn, and did not stop until he pulled into the driveway of his destination.

The officers approached Hughes, who had exited his vehicle, and informed him that they pulled him over because he did not have his seat belt on and because his vehicle lacked insurance. A uniformed officer soon arrived and issued written warnings for the seat belt and insurance violations, and the officers then told Hughes he was "free to go." As Hughes walked back to his vehicle, an officer asked Hughes "if he minded speaking with me again," and Hughes readily responded, "sure." The officer asked why someone would report "information that Hughes was possibly dealing narcotics," and Hughes speculated that someone must be angry at him. The officer then asked if Hughes would consent to a search of his vehicle, and Hughes agreed.

During the vehicle search, the officer found a .38 caliber pistol hidden under the driver's seat, digital scales between the driver's seat and door, a shotgun, and two rifles. Meanwhile, as the search of Hughes's vehicle began, another officer asked for consent to pat down Hughes, and Hughes again consented. In the pat-down search, the officer detected a hard object he believed could be a weapon, which turned out to be a narcotics smoking pipe. The officer also felt an object in Hughes's pants pocket that he suspected to be narcotics, which turned out to be a plastic bag full of one-inch by one-inch bags.

At that time, police handcuffed Hughes. As the arresting officer continued the pat-down and shook out Hughes's pants leg, a small packet containing white powder fell to the ground. As Hughes was

---

[5] To the extent that cross-examination of the State's witnesses created issues of credibility, such issues are resolved by the trial court, and we construe the evidence most favorably to the upholding of the trial court's findings. See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[6] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

placed into a patrol car, he kicked his leg, dislodging another packet of white powder. Both packets were later determined to contain methamphetamine.

Based on the pistol, the methamphetamine, the digital scales, and the multiple small plastic bags, Hughes was charged with possession of methamphetamine with intent to distribute, possession of a firearm during the commission of a drug offense, and possession of a concealed weapon. After Hughes unsuccessfully moved to suppress the evidence discovered after the traffic stop, Hughes was convicted in a bench trial, giving rise to this appeal.

Hughes contends that the trial court erred in failing to suppress the evidence discovered and seized after the traffic stop, because the police violated his Fourth Amendment right to be free of unreasonable search or seizure by police. We disagree.

We note at the outset that the basis for the initial surveillance of Hughes is not constitutionally relevant, as the police initially made contact with Hughes during a traffic stop. Thus, our inquiry begins with the issue of whether that initial traffic stop was permissible.

1. *Authority to conduct the traffic stop.* A traffic stop is permissible if, based on the totality of the circumstances, "the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Punctuation omitted.) *Vansant v. State*, supra, 264 Ga. at 320 (2). See *Whren v. United States*[7] (ulterior police motive does not invalidate objectively justifiable behavior under the Fourth Amendment); *Ciak v. State*.[8] Here, the officers who initiated the traffic stop (i) had personally observed Hughes driving without a seat belt in violation of OCGA § 40-8-76.1 (b), and (ii) were informed by dispatch that Hughes's vehicle lacked proper insurance as required by OCGA § 40-6-10 (b). Either of these violations was a sufficient basis for executing the traffic stop. See, e.g., *Temples v. State*[9] (police's observation of driver without seat belt justified traffic stop); *Buffington v. State*[10] ("[t]he existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials; a detaining officer is entitled to rely on the information given him by a fellow officer in the formation of an articulable suspicion") (punctuation omitted).

2. *Validity of consent.* Next, we must examine the permissibility of the search of Hughes's vehicle and the pat-down search of Hughes, both of which were done pursuant to Hughes's consent. "In deciding

---

[7] *Whren v. United States*, 517 U. S. 806, 812 (II) (A) (116 SC 1769, 135 LE2d 89) (1996).
[8] *Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004).
[9] *Temples v. State*, 228 Ga. App. 228, 230 (491 SE2d 444) (1997).
[10] *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997).

whether consent to search is valid, the [United States] Supreme Court has made clear that the sole test is whether the consent was voluntary.... [V]oluntariness is a question of fact to be determined from all the circumstances." (Citations, punctuation and footnote omitted.) *State v. Sims*.[11] See *Ohio v. Robinette*.[12]

Here, after police had issued the written citations, they told Hughes he was "free to go." As Hughes was walking back toward his vehicle, an officer asked Hughes "if he minded speaking with" an officer, and Hughes readily assented. After Hughes answered the officer's question, the officer sought Hughes's consent to search Hughes's vehicle. During this brief exchange, which took place after police had told Hughes he was free to go, Hughes was not *instructed* to wait and answer more questions, police had not drawn their weapons, and Hughes was not impeded physically or verbally. Under these circumstances, merely asking Hughes if he minded speaking further with the officer did not extend the initial traffic stop detention, because "mere police questioning does not constitute a seizure." (Punctuation omitted.) *Salmeron v. State*.[13] Therefore, this is not a case where the request for consent unduly extended the duration of the permissible traffic stop; as the traffic stop had ceased and Hughes was no longer detained, the encounter had de-escalated to a consensual first-tier encounter. Compare *State v. Sims*, supra, 248 Ga. App. at 279 ("if the officer continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop") (emphasis omitted). That Hughes could not drive his car due to the insurance violation is not dispositive, because Hughes had pulled into the driveway of his final destination, the residence of a person he knew.

Having de-escalated the traffic stop, police did not need any additional suspicion to ask another unrelated question or to request consent to search. "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual and request consent to search — as long as the police do not convey a message that compliance with their requests is required." (Punctuation omitted.) *Hampton v. State*.[14] See *Salmeron v. State*, supra, 280 Ga. at 736 (1). "[I]f the consent is voluntary, an officer may obtain consent to search a car following the conclusion of

---

[11] *State v. Sims*, 248 Ga. App. 277, 279 (546 SE2d 47) (2001).
[12] *Ohio v. Robinette*, 519 U. S. 33, 40 (117 SC 417, 136 LE2d 347) (1996).
[13] *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006).
[14] *Hampton v. State*, 287 Ga. App. 896, 899 (1) (652 SE2d 915) (2007).

a valid traffic stop, without reasonable suspicion of criminal activity." *State v. Sims*, supra, 248 Ga. App. at 279. Under the circumstances of this case, in which Hughes had been released from the traffic stop, the officers' request to ask Hughes a question and their subsequent immediate requests to search Hughes's vehicle and conduct a pat-down were permissible. See *Hampton v. State*, supra, 287 Ga. App. at 898-899 (1) (affirming denial of a motion to suppress where police requested and received consent to search "immediately" after returning driver's license and insurance card).

Based on Hughes's consent to search the vehicle, once the police found the pistol hidden under the driver's seat, police had probable cause to arrest Hughes for a concealed-weapon violation and then to search him incident to that arrest. See OCGA § 17-5-1 (a) (1) ("[w]hen a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of . . . [p]rotecting the officer from attack . . ."). Moreover, as Hughes voluntarily consented to the pat-down search, police were permitted to seize any object readily identifiable as contraband during a plain-feel pat-down. See *Dunn v. State*.[15] Therefore, in light of the circumstances, the plastic bag containing baggies and the narcotic smoking pipe were subject to seizure. After Hughes was arrested, the additional narcotics discovered in his pants leg were likewise admissible as they were found incident to a lawful arrest based on probable cause. Accordingly, we discern no error in the trial court's denial of Hughes's motion to suppress the items seized after the traffic stop.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED AUGUST 22, 2008.

*Jason P. Carini*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.

---

[15] *Dunn v. State*, 289 Ga. App. 585, 586 (1) (b) (657 SE2d 649) (2008).