A11A2119. ROWE v. THE STATE.
(725 SE2d 861)

MILLER, Judge.

After Steven Rowe was charged with trafficking in cocaine (OCGA § 16-13-31 (a) (1)), he moved to suppress evidence obtained

as a result of a police traffic stop of his vehicle. The trial court denied Rowe's motion, and this Court granted Rowe's application for interlocutory appeal. On appeal, Rowe contends that the officer lacked a reasonable articulable suspicion to conduct the traffic stop and expanded improperly the scope of the stop beyond its original purpose. After a thorough review, we conclude that the stop did not violate the Fourth Amendment. Accordingly, we affirm.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous. The trial court's application of law to undisputed facts, however, is subject to de novo review.

(Citation and punctuation omitted.) *Sommese v. State*, 299 Ga. App. 664, 665 (683 SE2d 642) (2009).

So construed, the evidence shows that an officer with the Greene County Sheriff's Office was patrolling a section of Interstate 20 on May 11, 2010. The officer observed Rowe's vehicle in the left lane traveling slower than every other motorist on the interstate and slower than the posted maximum speed limit of 70 miles per hour. The officer observed that other motorists did not appear to be speeding and were attempting to pass Rowe's vehicle by moving into the right-hand lane, creating the potential for an accident. Based on his observations, the officer initiated a traffic stop of Rowe's vehicle.

Upon stopping the vehicle, the officer made contact with Rowe and requested that Rowe exit the vehicle and supply his driver's license. The officer detected "an odor of burnt marijuana" coming from inside the vehicle. The officer explained to Rowe the dangers of traveling in the left-hand lane at a slow speed and informed Rowe that he would receive only a warning. As he was speaking with Rowe, however, the officer noticed that Rowe was extremely nervous, "his voice kept pitching and cracking," he would not make eye contact, and his hands and body were trembling. The officer learned that the vehicle was a rental car, and approached the vehicle to obtain the rental agreement. The officer noticed that the passenger was also exhibiting extremely nervous behavior.

The rental agreement reflected that the vehicle was rented by a third individual, who was not present. Neither Rowe nor the passenger was listed as an authorized driver on the rental agreement, which permitted the vehicle to be operated only in the states

of South Carolina and North Carolina. The rental agreement further reflected that the vehicle had been due back two weeks earlier.

The officer returned Rowe's documentation and told him that he was free to go. In response, Rowe appeared to be relieved and his voice became steady. As Rowe was returning to his vehicle, however, the officer asked Rowe if he would answer a few more questions. Rowe agreed and became very nervous again. The officer asked Rowe if there were any drugs or contraband in the vehicle, and Rowe answered in the negative. The officer also asked Rowe for consent to search the vehicle, which Rowe ultimately refused to provide. The officer informed Rowe that he had a K-9 unit in the patrol car and was going to use it to conduct a free-air sniff of the vehicle.

The officer instructed Rowe and the passenger to step aside the vehicle. The passenger refused the officer's request to exit the vehicle. The passenger then began sliding back and reaching under his seat, causing the officer to believe the passenger was either reaching for a gun or trying to conceal something. The officer drew his weapon and arrested the passenger. Thereafter, the officer searched under the passenger seat and recovered a bag containing approximately one kilogram of cocaine. Rowe and the passenger were jointly charged with trafficking in cocaine.

Rowe moved to suppress the drug evidence seized from the traffic stop, arguing that the initial stop and prolonged detention violated his Fourth Amendment rights. Following a hearing, the trial court denied Rowe's motion.

1. Rowe contends that the trial court erred in denying his motion to suppress, because the officer lacked a reasonable suspicion to conduct the traffic stop. We disagree.

The stop of a vehicle is authorized if the officer observes a traffic offense. *Taylor v. State*, 230 Ga. App. 749, 750 (1) (a) (498 SE2d 113) (1998). Additionally,

> [t]he primary purpose of traffic enforcement is the protection of the traveling public. So long as the stop was based upon conduct the officer observed, not on a mere "hunch," and it was not pretextual, arbitrary, or harassing, an officer may act on a legitimate concern for public safety in stopping a driver.

(Citation and punctuation omitted.) *State v. Calhoun*, 255 Ga. App. 753, 755 (566 SE2d 447) (2002).

Here, the officer testified that he initiated the traffic stop because Rowe was traveling in the left-most lane at a speed less than the maximum speed limit, impeding the flow of traffic, and creating the risk of an accident. Notwithstanding Rowe's challenges to the

officer's estimate of his speed,[1] the trial court was authorized to find that the officer's speed assessment was credible, and that the officer had a reasonable basis to investigate a traffic violation. See OCGA § 40-6-184 (a) (2) (prohibiting a vehicle from traveling in the left-most lane at less than the maximum speed limit when the driver knows or reasonably should know he is being overtaken by another vehicle); *Gabbidon v. State*, 184 Ga. App. 475, 476 (2) (361 SE2d 861) (1987) (holding that an officer's testimony that the defendant's vehicle was impeding the flow of traffic in violation of OCGA § 40-6-184 was sufficient evidence to justify an investigatory stop); see also *Calhoun*, supra, 255 Ga. App. at 755 (holding that an officer was authorized to stop the defendant's vehicle out of concern for public safety).

2. Rowe next contends that, even if the initial stop was valid, the officer impermissibly expanded the scope of the stop. We disagree.

(a) *The Investigative Traffic Stop*

Rowe asserts that the officer fulfilled the purpose of the traffic stop when he first informed Rowe that he would not be issuing a citation, and that he would allow Rowe to get back on his way. His argument is without merit.

"[T]he investigative stop of a vehicle cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop." (Citations and punctuation omitted.) *Sommese*, supra, 299 Ga. App. at 668 (1).

> It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.

(Citation and punctuation omitted.) *Langston v. State*, 302 Ga. App. 541, 544 (691 SE2d 349) (2010). "Upon receiving [his] license and warning ticket, a reasonable person would have concluded that the traffic stop had ended." (Punctuation omitted.) *Davis v. State*, 306 Ga. App. 185, 187 (1) (702 SE2d 14) (2010).

Here, the record shows that when the officer first informed Rowe that he would not be issuing a citation, the officer had requested only Rowe's driver's license, and had not yet checked its

---

[1] Rowe also argues that no traffic violation occurred because the other vehicles were traveling faster than the posted speed limit. However, Rowe has failed to provide any record support for his assertion that the other vehicles were speeding. See *State v. Parke*, 304 Ga. App. 124, 127-128 (695 SE2d 413) (2010) (OCGA § 40-6-184 (a) (2) does not apply where the driver is being overtaken by a vehicle exceeding the maximum speed limit).

status or otherwise requested registration and insurance documentation. As part of the stop, the officer was permitted to question Rowe about his driver's license, origination, and itinerary, so that he could investigate and determine whether Rowe was entitled to continue operating the vehicle and whether he was in lawful possession of the vehicle. See *Davis*, supra, 306 Ga. App. at 187 (1); *Sommese*, supra, 299 Ga. App. at 670 (1) (b). The traffic stop ended when the officer returned Rowe's documents and told him he was free to go. See *Davis*, supra, 306 Ga. App. at 187 (1).

(b) *Post-Traffic Stop*

Rowe next asserts that he was unlawfully detained after the officer told him he was free to go. We disagree since the evidence shows that Rowe consented to remain on the scene and, thereafter, the officer had a reasonable suspicion of other illegal activity for further detention.

> Once [an officer's purpose for conducting a traffic stop] has been fulfilled, the continued detention of the vehicle and its occupants is constitutional only if the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter.

(Citation and punctuation omitted.) *Sommese*, supra, 299 Ga. App. at 668 (1).

(i) *Consensual First-Tier Encounter*

The evidence shows that after the officer informed Rowe that he was free to go, Rowe agreed to answer more of the officer's questions and remained on the scene. During this subsequent exchange, there was no evidence that Rowe was mandated to wait, that the officer had drawn his weapon, or that Rowe was otherwise impeded from leaving. See *Hughes v. State*, 293 Ga. App. 404, 407 (2) (667 SE2d 163) (2008).

> Under these circumstances, merely asking [Rowe] if he minded speaking further with the officer did not extend the initial traffic stop detention, because mere police questioning does not constitute seizure. . . . [A]s the traffic stop had ceased and [Rowe] was no longer detained, the encounter had de-escalated to a consensual first-tier encounter.

(Citation, punctuation and footnote omitted.) Id.

(ii) *Second Detention*

During the first-tier consensual encounter, the officer sought Rowe's consent to search the vehicle, which Rowe ultimately refused

to provide. Rowe's refusal to provide consent and the officer's order that Rowe step behind the patrol car re-escalated the encounter into a second detention. See *Groves v. State*, 306 Ga. App. 779, 781 (703 SE2d 371) (2010) (the officer's actions evidenced intent to keep motorist from leaving, thereby escalating a casual encounter to second detention).

This second detention was nevertheless reasonable, because "the officer ha[d] a reasonable articulable suspicion of other illegal activity[.]" (Citation and punctuation omitted.) *Sommese*, supra, 299 Ga. App. at 668 (1); *State v. Whitt*, 277 Ga. App. 49, 51-53 (625 SE2d 418) (2005) (holding that the officer was authorized to detain a driver after telling him he was free to go, because the officer previously observed that the driver appeared to be nervous, the authorized driver under the rental agreement was absent, and the driver exhibited a lack of knowledge regarding his destination and the passenger's identity). Significantly, the officer had previously smelled an order of burnt marijuana; observed extremely nervous behavior from both Rowe and the passenger; and learned that neither Rowe nor the passenger was authorized to drive the rental vehicle, which was not permitted to be driven in Georgia and should have been returned two weeks earlier. Additionally, the officer heard conflicting stories from Rowe and the passenger about their trip, and neither Rowe nor the passenger appeared to know or was otherwise able to identify the individual authorized to drive the rental car. Based on the totality of the circumstances, the officer was authorized to detain Rowe for further investigation, including a free-air search. See *Whitt*, supra, 277 Ga. App. at 53; *Wilson v. State*, 306 Ga. App. 286, 289 (2) (b) (702 SE2d 2) (2010) (officer was authorized to detain the defendant and passenger for a free-air search where the defendant and passenger gave the officer conflicting stories, and the officer detected the smell of air freshener that could have been used to mask the smell of drugs, observed increasingly nervous behavior, and knew that the area of the stop was a major drug thoroughfare). Moreover, the continued detention to perform the free-air search was minimal given that the drug dog was already present at the scene. *Jones v. State*, 259 Ga. App. 849, 851 (578 SE2d 562) (2003).

Accordingly, the officer did not impermissibly expand the scope of the stop, and the trial court properly denied Rowe's motion to suppress.

*Judgment affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 12, 2012.

*James W. Smith*, for appellant.

*Fredric D. Bright, District Attorney, Michael B. Fulcher, Assistant District Attorney*, for appellee.