**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 17, 2012**

# In the Court of Appeals of Georgia

A12A1156. WILSON v. THE STATE.

PHIPPS, Presiding Judge.

After a bench trial on stipulated facts, Andrew Wilson was convicted of possession of less than one ounce of marijuana. He appeals his conviction, contending that the court erred by denying his motion to suppress because police officers unlawfully stopped and searched his vehicle, and unlawfully prolonged his detention. For the reasons that follow, we affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a

reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Construing it most favorably to support the trial court's findings and judgment,[2] the evidence showed the following. On March 11, 2011, a special agent with the narcotics team of the sheriff's office was conducting surveillance of a residence in connection with the possible sale of marijuana from the residence. As the agent watched, a vehicle arrived at the residence. The driver got out of the vehicle and walked up the driveway; about 30 seconds later, the driver drove away in the vehicle. Associating the driver's behavior with "possible narcotic activity," the agent began following the vehicle. When the agent was "pretty much immediately behind" the vehicle, he saw the driver move into a turning lane and then turn, effecting both moves without signaling. The agent called a lieutenant with the city police department who was in the area and asked him to stop the vehicle for having changed

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations, emphasis and punctuation omitted).

[2] See *Miller v. State*, 288 Ga. 286, 288 (1) (702 SE2d 888) (2010).

lanes and turned without signaling. The agent told the lieutenant that "they" had been involved in a drug investigation.

The lieutenant saw the vehicle and began following it. He saw that the driver was not wearing a seatbelt. Based on the suspected seatbelt and signal violations, the lieutenant activated his emergency equipment and initiated a stop. Wilson was driving the vehicle, and there were two passengers inside.

The lieutenant told Wilson that he had stopped him for the seatbelt and signal violations. Wilson admitted to the lieutenant that he had not been wearing a seatbelt, but explained that he did not think he needed to use a turn signal under the circumstances.

The lieutenant asked Wilson for his driver's license and insurance information. He noticed that Wilson was very nervous and his hands were shaking so badly that he "was having difficulty actually manipulating his . . . his wallet to get anything out." He also noticed "a pretty strong" odor coming out of the vehicle, such as cologne or "some sort of . . . a cover-up odor," that seemed to be mixed with a faint odor of marijuana. He asked Wilson to step out of the vehicle. The lieutenant asked Wilson "about marijuana in the car" or about "recent smoking in the vehicle." The lieutenant testified that Wilson stated that he had "a history of smoking marijuana .

. . but there was no marijuana in the vehicle currently."[3] When asked if he would consent to a search of the vehicle, Wilson declined.

Knowing that a "K9" unit was nearby, the lieutenant asked the unit to respond while he continued his investigation. The lieutenant estimated that the canine unit (the narcotic detection dog and the officer) arrived "three or four minutes" after the request was made; the trial court found, after viewing a videotape of the traffic stop, that three minutes elapsed between the time the stop began and the time the lieutenant requested the canine unit, and seven minutes elapsed between the time of the request and the time the canine unit arrived.

The special agent was watching from across the street when the canine unit arrived at the scene of the traffic stop. The special agent watched the narcotic detection dog "go around" Wilson's vehicle; he testified that he was told that there was "a positive result for - - positive detection from the K9," and the vehicle was searched.[4] The search revealed less than one ounce of marijuana. Wilson was issued

---

[3] Regarding our references to evidence from the trial, see generally *Bell v. State*, 291 Ga. App. 169, 172 (3) n. 2 (661 SE2d 207) (2008) (in reviewing the denial of a motion to suppress, this court considers all the evidence, including evidence introduced at trial and at the hearing on the motion to suppress).

[4] Defense counsel objected, stating: "I will object to hearsay as far as the positives, as far as the dog." The court sustained the objection.

4

citations for possession of marijuana, seatbelt, and turn signal violations. The seatbelt and signal citations were dismissed prior to trial.

1. Wilson contends that the trial court erred in denying his motion to suppress because the traffic stop was illegal. He asserts that the stop could not be justified based on his alleged violation of OCGA § 40-6-123, as there was no evidence that the movement of his vehicle into the dedicated turn lane without a signal was unsafe.[5] This argument presents no basis for reversal.

"Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[6] "The stop of

---

[5] See OCGA § 40-6-123, which pertinently provides:
(a) No person shall . . . turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section.
(b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

[6] *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994) (citation and punctuation omitted).

a vehicle is authorized if the officer observes a traffic violation."[7] Probable cause may be established based on the collective knowledge of the communicating officers.[8]

Wilson is mistaken in focusing solely on whether he was required to use a turn signal before making the lane change,[9] inasmuch as the lieutenant testified that he initiated the stop based also on his observation that Wilson was not wearing a seatbelt. The seatbelt violation alone authorized a stop of the vehicle.[10] Because there existed a reasonable articulable suspicion for a brief investigatory stop of the vehicle, the trial court did not err in denying the motion to suppress on the ground asserted.[11]

---

[7] *Rowe v. State*, 314 Ga. App. 747, 749 (1) (725 SE2d 861) (2012) (citation omitted); see *Chamberlain v. State*, 300 Ga. App. 79, 80 (684 SE2d 134) (2009).

[8] *Bell*, supra at 172 (3) (probable cause to stop a vehicle and to make a warrantless arrest may be established based on the collective knowledge of the communicating officers; arresting officers did not lack probable cause to stop vehicle and arrest suspect because they acted in part on a call from another officer who had information from an informant not conveyed to the arresting officers).

[9] See *State v. Reddy*, 236 Ga. App. 106, 108 (1) (a) (511 SE2d 530) (1999) (traffic stop based on defendant's turn without signaling as a violation of OCGA § 40-6-123 was not unlawful, because officer's vehicle was five to seven feet behind defendant's vehicle, "well within the ambit of [OCGA § 40-6-123]'s 'zone of reasonable safety,' when such signals are required").

[10] *Schramm v. State*, 286 Ga. App. 156, 158-159 (4) (648 SE2d 392) (2007); OCGA § 40-8-76.1.

[11] See *Hughes v. State*, 293 Ga. App. 404, 406 (1) (667 SE2d 163) (2008); see *Reddy*, supra.

2. Wilson contends the trial court erred in denying his motion to suppress when police unlawfully extended the duration of the traffic stop. According to Wilson, "[t]he prolonged detention was not narrowly tailored to its underlying justification," which was to issue citations or warnings for the alleged traffic violations. The contention is without merit.

> The investigative stop of a vehicle cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop. . . . Once an officer's purpose for conducting a traffic stop has been fulfilled, the continued detention of the vehicle and its occupants is constitutional only if the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter.[12]

It is not clear from the record precisely how long the stop was extended beyond the time required for the officer to fulfill the purpose of the traffic stop. The trial court found, however, that ten minutes had elapsed between the time the stop was initiated and the time the narcotic detection dog arrived and searched the vehicle. The record also shows that the lieutenant requested the canine unit while he continued his investigation, and that Wilson was issued citations for the alleged traffic violations.

---

[12] *Rowe*, supra at 750-751 (2) (a), (b) (citation and punctuation omitted).

Thus, it is clear that the period of detention preceding the arrival of and search by the canine unit was minimal.[13]

In any event, the evidence gave rise to a reasonable articulable suspicion of other illegal activity. When the lieutenant approached the vehicle, which had been followed after leaving a house under surveillance for possible marijuana sales, he smelled marijuana and saw that Wilson was very nervous; and Wilson admitted to the lieutenant that he had a history of smoking marijuana. Considering the totality of the circumstances, the trial court did not err in concluding that the minimal delay was justified.[14]

3. Wilson contends the trial court erred in denying his motion to suppress when officers lacked probable cause to search his vehicle. Specifically, he argues that there was no evidence to establish probable cause for officers to believe there was contraband in the vehicle, and that the special agent's testimony regarding what he was told about the narcotic detection dog's response was hearsay.

---

[13] See *Jones v. State*, 259 Ga. App. 849, 851 (578 SE2d 562) (2003).

[14] See *Wilson v. State*, 306 Ga. App. 286, 289 (2) (b) (702 SE2d 2) (2010); *Boyd v. State*, 300 Ga. App. 455, 457-458 (1) (685 SE2d 319) (2009); *Richbow v. State*, 293 Ga. App. 556, 559-560 (667 SE2d 418) (2008); *State v. Whitt*, 277 Ga. App. 49, 52-53 (625 SE2d 418) (2005); *State v. Williams*, 264 Ga. App. 199, 203-205 (590 SE2d 151) (2003).

The existence of probable cause is determined by whether, given all the circumstances . . . , including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[15]

Probable cause to search an automobile exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law. Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction.[16]

Pretermitting the issue of whether the special agent's testimony regarding what he was told about the dog's behavior was admissible at the suppression hearing,[17] Wilson's argument is without merit.

---

[15] *Dawson v. State*, 238 Ga. App. 263, 265 (1) (518 SE2d 477) (1999) (citations and punctuation omitted).

[16] *State v. Menezes*, 286 Ga. App. 280, 283 (2) (648 SE2d 741) (2007) (citations and punctuation omitted).

[17] See *McDaniel v. State*, 263 Ga. App. 625, 627 (1) (588 SE2d 812) (2003) ("[A]t a suppression hearing, unlike most trials, the conduct and motives of the officers are at issue, and the court must look to the information available to the officer, including hearsay, to determine if probable cause existed. Accordingly, the trial judge may admit hearsay testimony at the hearing, giving it such weight and credit as he deems proper, although such evidence may not be admissible at trial.").

In addition to the challenged testimony of the special agent, there was evidence that the agent had watched the narcotic detection dog walk around the vehicle before the search, the lieutenant had smelled marijuana emanating from the vehicle, the vehicle had just left a residence under surveillance for possible marijuana sales, and Wilson admitted to the lieutenant that he had a history of smoking marijuana. Based on the totality of the circumstances, law enforcement officers had probable cause to believe that there was marijuana in the vehicle.[18] The trial court did not err in denying Wilson's motion to suppress.[19]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[18] See generally *Menezes*, supra; *Dawson*, supra at 268 (1).

[19] See *Menezes*, supra; *Dawson*, supra.