**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**April 21, 2015**

# In the Court of Appeals of Georgia

A15A0331. THE STATE v. ANDERSON.

MILLER, Judge.

The trial court granted James Wilson Anderson's motion to suppress evidence seized from his vehicle. The State appeals, contending that the trial court erred because Anderson voluntarily consented to a search of his vehicle during a first-tier encounter. For the reasons that follow, we agree and reverse the grant of Anderson's motion to suppress.

> [I]n reviewing the trial court's suppression of evidence, we must construe the evidence most favorably to upholding the trial court's findings and judgment. Moreover, because we accept the trial court's findings on disputed facts and witness credibility, a determination of voluntariness must be upheld unless it is clearly erroneous. Nevertheless, when *controlling facts* are not in dispute, such as those facts discernible from a videotape, our review is de novo. Finally, we apply the legal principles to the facts independently.

(Punctuation and footnotes omitted; emphasis supplied.) *State v. Brown*, 308 Ga. App. 480, 482-483 (708 SE2d 63) (2011); see also *Green v. State*, 275 Ga. 569, 573 (2), n.11 (570 SE2d 207) (2002) (in reviewing a videotape, we owe no deference to the trial court's findings of fact).

So viewed, the evidence shows that in December 2013, a Cherokee County deputy sheriff stopped Anderson's truck for a taillight violation. Upon approaching Anderson's truck, the police officer asked Anderson for his driver's license and discussed the reason for the stop. The police officer briefly questioned Anderson and allowed Anderson to exit his vehicle to observe the violation. The police officer returned to his patrol car to run Anderson's driver's license through dispatch, and no issues were noted. The police officer then returned to the front of his patrol car, where Anderson had been standing, and they discussed the fact that they had similar trucks. The police officer then gave Anderson a verbal warning to have the taillight fixed and returned Anderson's driver's license to him.

After receiving his driver's license, Anderson walked back to his truck, and as he was about to enter it, the police officer asked for a few more moments of his time. Anderson agreed and walked back towards the officer, who was waiting behind the truck. The police officer asked Anderson if he had anything illegal in his truck, and

Anderson answered in the negative. The police officer also asked for and received Anderson's consent to search his vehicle. During a search of the truck, the police officer found a methamphetamine pipe with burnt residue inside of it. The police officer then asked Anderson about the pipe, and Anderson admitted that he had smoked methamphetamine the day before. Anderson also admitted that he had a marijuana pipe inside his truck The police officer then arrested Anderson, and Anderson was charged with possession of methamphetamine, possession of drug related objects, and the taillight violation.

Anderson moved to suppress the drug evidence seized from the traffic stop, arguing that after issuing a warning, the police officer initiated a second detention that was not supported by an articulable suspicion of illegal activity. Following a hearing, the trial court granted Anderson's motion, concluding that after Anderson started to enter his vehicle, the police officer initiated a second detention that was not supported by additional articulable suspicion.

On appeal, the State contends that the search was lawful because the stop had de-escalated into a first-tier encounter when the police officer advised Anderson that

3

he would receive only a warning and allowed Anderson to return to his vehicle, and Anderson gave consent to the search during this first-tier encounter. We agree.

Anderson does not dispute that the police officer was authorized to conduct the traffic stop, and in his motion to suppress, he argued only that the police officer illegally detained him after the conclusion of the stop.[1]

> A law enforcement officer who questions and detains a vehicle's driver and passengers outside the scope of a valid traffic stop exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity or unless the valid traffic stop has de-escalated into a consensual [first-tier] encounter.

(Footnote omitted.) *Cuaresma v. State*, 292 Ga. App. 43, 46 (2) (663 SE2d 396) (2008). "A consensual encounter requires the voluntary cooperation of a private citizen with noncoercive questioning by a law enforcement official. Because the individual is free to leave at any time during such an encounter, he is not 'seized'

---

[1] While Anderson argues on appeal that the police officer unreasonably prolonged the stop because he continued to talk to Anderson for several minutes after receiving confirmation from dispatch, Anderson did not raise this issue in his motion to suppress. Consequently, this issue was not preserved for review. See, e.g., *State v. Allen*, 256 Ga. App. 798, 799-800 (570 SE2d 34) (2002) (refusing to consider alternate reasons defendant urged to affirm grant of motion to suppress because these alternate grounds were not made in defendant's written motion to suppress).

within the meaning of the Fourth Amendment." (Citation omitted.) *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009). In determining whether a stop has de-escalated into a first-tier encounter, such that a reasonable person would have felt free to leave, "three important factors have been given particular scrutiny: (a) whether the driver's documents have been returned to him; (b) whether the officer informed the driver that he was free to leave; and (c) whether the driver appreciated that the traffic stop had reached an endpoint." (Citation omitted.) Id.

In this case, after receiving confirmation from dispatch that Anderson's driver's license was clear, the videotape recording clearly shows that the police officer engaged in a brief conversation with Anderson and then gave Anderson a verbal warning to fix his taillight. At this point, the police officer returned Anderson's driver's license. Although the police officer did not expressly tell Anderson that he was free to go, the videotape recording clearly shows that Anderson believed the stop had ended because he walked back to his vehicle and proceeded to get inside it. See *Rowe v. State*, 314 Ga. App. 747, 750 (2) (a) (725 SE2d 861) (2012) ("Upon receiving his license and warning ticket, a reasonable person would have concluded that the traffic stop had ended.") (citation and punctuation omitted).

The fact that Anderson agreed to continue talking to the police officer did not render the post-stop encounter a second detention. Notably,

> [d]uring this subsequent exchange, there was no evidence that [Anderson] was mandated to wait, that the officer had drawn his weapon, or that [Anderson] was otherwise impeded from leaving. Under these circumstances, merely asking [Anderson] if he minded speaking further with the officer did not extend the initial traffic stop detention, because mere police questioning does not constitute seizure. As the traffic stop had ceased and [Anderson] was no longer detained, the encounter had de-escalated to a consensual first-tier encounter.

(Citation and punctuation omitted.) *Rowe*, supra, 314 Ga. App at 751 (2) (b) (i). Therefore, the trial court erred in concluding that the police officer initiated a second detention that needed to be supported by articulable suspicion of illegal activity. Accordingly, we reverse the trial court's grant of Anderson's motion to suppress.

*Judgment reversed. Andrews, P. J., and Branch, J., concur.*